UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

| | |
|---|---|
| RANDALL COLEMIRE, | ) |
| Plaintiff, | ) Civil Action No. 2: 23-134-DCR |
| V. | ) |
| LISA A. YEARY, et al., | ) **MEMORANDUM OPINION** |
| Defendants. | ) **AND ORDER** |

*** *** *** ***

Plaintiff Randall Colemire instituted this civil rights action under 42 U.S.C. § 1983 and Kentucky state law, asserting claims against multiple defendants[1] relating to actions taken at the Mason County Detention Center ("MCDC"). More specifically, Colemire contends that he was assaulted due to the defendant's failure to protect him and that the defendants were further deliberately indifferent to his serious medical needs. [Record No. 1] The defendants moved for summary judgment, arguing that Colemire's claims under the Eighth or Fourteenth Amendment to the United States Constitution are barred because he failed to exhaust his administrative remedies. Alternatively, the defendants contend that Colemire's constitutional claims cannot survive summary judgment. [Record No. 41] United States Magistrate Judge Candace J. Smith submitted a Report and Recommendation ("R&R") in which she

---

[1] Named defendants include Jailer Lisa Yeary, Deputy Michael Rigdon, Deputy Brandi Monroe, Deputy Terra Lennex, Deputy John Blake Guttridge, Deputy Andrew Fulton, Deputy Austin Bellew, and Chief Deputy Gerald Curtis.

- 1 -

recommends that the undersigned grant the defendants' motion for summary judgment. [Record No. 51]

This Court makes *de novo* determinations of those parts of the magistrate judge's recommendation to which objections are made. *See* 28 U.S.C. § 636(b)(1)(C). However, "[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings." *Thomas v. Arn*, 474 U.S. 140, 150 (1985). Colemire has not filed timely objections to the R&R.

Following review of the entire record, including Magistrate Smith's R&R, the Court will grant the defendants' motion for summary judgment. The undersigned concludes that there are no material factual issues in dispute and the defendants are entitled to judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. [2]

## I.

Randall Colemire was booked into the MCDC on May 14, 2022, after being arrested for a parole violation. Before resolution of the violation, Coleman was involved in an altercation with inmate Tyler Jordan on November 30, 2022. On the day of the altercation, MCDC deputies woke Colemire and several other inmates in the "main cell" area to deliver laundry while was later found to contain hidden packets of peanut butter. Jordan began eating the peanut butter but was caught by deputies. Deputies then directed Jordan to pack his things and prepare for transfer to an isolation cell. According to Colemire, it was Jordan's birthday, and Jordan's family was slated to visit him the following day. When jail staff arrived on the

---

[2] Colemire's account of events is presumed true in evaluating the defendants' motion for summary judgment. *See generally, Jackson-Gibson v. Beasley*, 118 F.4th 848 (6th Cir. 2024).

scene to determine where the contraband originated and to discipline the inmates, Jordan was escorted to an isolation unit. [Record No. 42, pp. 36-37] Colemire then claims to have "selflessly" attempted to take the blame for the smuggled peanut butter so that Jordan would be able to see his family. [*Id.*, p. 37] Colemire's efforts proved futile, and he was also directed to the isolation cell shortly thereafter. [*Id.*, p. 38]

Colemire alleges deputy Guttridge opened the door to the isolation cell, and Jordan stated "don't bring him in here" and "I don't want him in here. There's going to be problems." [*Id.*, p. 41] Before Guttridge shut the cell door, he called another deputy over the radio and relayed Jordan's recent statements. The deputy on the other end of the radio responded, "put him [Colemire] in there anyways." [*Id.*, pp. 42-43]

As Guttridge shut the cell door, Colemire looked through the small opening to the outside, asking, "did you not hear what he said?" [*Id.*, p. 42] In the cell, Jordan began to scream and Colemire turned around to ask him what was wrong. [*Id.*, p. 43] But before Colemire could finish his question, Jordan punched him. [*Id.*] Colemire was struck multiple times, and subsequently pepper sprayed by officer Guttridge and tased by deputy Lennex. [*Id.*, p. 42; Record No. 41-4, p. 1-2] Colemire was pulled into the hallway, handcuffed, and slammed him to the ground by Guttridge. [Record No. 1, p. 7] Then, deputy Lennex fell on Colemire while the plaintiff was facedown. [*Id.*] This put additional pressure on Colemire's jaw which was already pressed into Guttridge's knee. [*Id.*] Once Colemire was restrained, deputy Lennex escorted him to wash off the pepper spray. The plaintiff sustained injuries to his jaw, finger, and ear. [Record No. 51, p. 6]

Colemire reported difficulty eating breakfast the next day. A jail nurse "gave Colemire medication for the inflammation and requested an x-ray." Later, an x-ray technician took an

x-ray of Colemire's jaw which he claims was "swollen beyond belief." [*Id.*] The x-ray revealed a broken jaw. Colemire was taken to the University of Kentucky Medical Center and Meadowview Regional Medical Center for further evaluation and treatment. [*Id.*, p. 7] Colemire underwent surgery on December 19, 2022. He claims that he "now has a huge scar across his jaw and underneath his neck, and [that] he needs to use his finger to remove food particles from between his teeth and jaw-line inside his mouth after each meal." [*Id.*]

## II.

Summary judgment is appropriate if there are no genuine disputes regarding any material facts and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002). The determination must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

The moving party carries an initial burden to produce evidence to present a prima facie case that the movant is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 317; *see also Angelo v. Kroger Co.*, No. 86-3912, 1987 U.S. App. LEXIS 11965, at *24 (6th Cir. Sept. 3, 1987) ("The burden of production imposed by Rule 56 requires the moving party to make a prima facie showing that it is entitled to summary judgment.") (internal citations omitted)). Once the moving party has met its burden of production, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Keeneland Ass'n, Inc. v. Earnes*, 830 F. Supp. 974, 984 (E.D. Ky. 1993) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). In deciding whether summary judgment is

appropriate, the Court views the "evidence in the light most favorable to the nonmoving party." *Lang v. City of Kalamazoo*, 744 F. App'x 282, 285 (6th Cir. 2018) (citing *Himmel v. Ford Motor Co.*, 342 F.3d 593, 598 (6th Cir. 2003). The undersigned, however, may not weigh the evidence or make credibility determinations, but must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52 (1986). *See also Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015).

### III.

The Prison Litigation Reform Act ("PLRA") requires individuals being detained to exhaust administrative remedies before bringing a lawsuit regarding prison conditions. 42 U.S.C. § 1997(e); KRS § 454.415. "A prisoner exhausts his remedies when he complies with the grievance procedures put forward by his correctional institution." *Mattox v. Edelman*, 851 F.3d 583, 590 (6th Cir. 2017). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). A prisoner must comply "with an agency's deadlines and other critical procedural rules" to properly exhaust his administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Exhaustion is mandatory and claims that have not been exhausted cannot be asserted before the Court. *Jones*, 549 U.S. at 218; *Troche v. Crabtree*, 814 F.3d 795, 798 (6th Cir. 2016). However, there are limited instances where exhaustion may be excused when the administrative procedures are rendered "unavailable" to an inmate. *Doe v. Snyder*, 945 F.3d 951, 954 (6th Cir. 2019) (citing *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016)).

Here, Colemire failed to exhaust his administrative remedies despite his arguments to the contrary. Colemire avers that MCDC had no published or available grievance procedures

to follow, but that even if it did, he had no ability to file a complaint while in segregation. [Record No. 51, p. 10] However, as Magistrate Judge Smith properly observed: (1) MCDC *does* publish, implement, and administer a grievance policy for inmates; (2) Colemire filed a grievance previously; and (3) Colemire "has pointed to no evidence showing he even asked officials for the opportunity to file a grievance." [*Id.*, pp. 10-11 (citing *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011)) ("This court requires an inmate to make affirmative efforts to comply with the administrative procedures[.]")] Thus, Colemire's claims fail on this basis alone. However, the Court will further address why Colemire's claims cannot succeed on the merits.

## IV.

### A. Failure to Protect

Colemire alleges that his constitutional rights were violated when officers placed him in the isolation cell with Jordan, contending that the officers failed to protect him from an obvious risk of harm. To succeed on a failure to protect claim under the Eight or Fourteenth Amendment of the United States Constitution under 42 United States Code § 1983, a plaintiff must establish the following elements:

> (1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;
> (2) Those conditions put the plaintiff at substantial risk of suffering serious harm;
> (3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and
> (4) By not taking such measures, the defendant caused the plaintiff's injuries.

*Westmoreland v. Butler Cnty.*, 29 F.4th 721, 729 (6th Cir. 2022) (citing *Castro v. Cnty. of L.A.*, 833 F.3d 1060, 1071 (9th Cir. 2016)).

Under the Fourteenth Amendment, the third prong is evaluated under an objective test, whereas the Eight Amendment requires a test based on the officer's subjective mental state. *See id*. The delineation depends on whether Colemire was a convicted prisoner or pretrial detainee during the relevant period. *See Brawner v. Scott County*, 14 F.4th 585, 597 (6th Cir. 2021). Colemire's classification here is murky. [Record No. 51, p. 12 ("The record is inconclusive regarding Colemire's status.")] However, Colemire's claim fails at the second prong, which is identical under either test. And because his claims cannot succeed under the Eight or the Fourteenth Amendment, the Court's analysis of Colemire's case under the second prong is dispositive.[3]

The undersigned agrees with Magistrate Judge Smith that Colemire has met the first prong of the failure to protect test, because the defendants admit they made an intentional decision to move Colemire into an isolation cell with Jordan. [Record No. 41, p. 2] Therefore, the Court proceeds to the second element which asks whether Colemire's placement put him at substantial risk of suffering serious harm.

In *Westmoreland*, the Sixth Circuit held a substantial risk of serious harm existed where the plaintiff, Westmoreland, was identified as a snitch by another inmate that knew him and subsequently informed all the plaintiff's cellmates he was a "rat." 29 F.4th 721 at 724. Westmoreland repeatedly asked to be moved because the other inmate had created hostile conditions among the cellmates by labeling the plaintiff an informant, but this request was

---

[3]   Claims regarding defendants who were not present or involved in Colemire's cell placement or medical care during the relevant period will be dismissed. Section 1983 does not allow for vicarious liability. *See D'Ambrosio v. Marino*, 747 F.3d 378, 386 (6th Cir. 2014).

continually ignored. The plaintiff was later beaten by a cellmate and suffered injury allegedly because of the guards' failure to protect or transfer him.

This case is factually distinct, however. First, Colemire was not a snitch. Instead, he attempted to take the blame for something he did not do. This us unlike *Westmoreland* which relied heavily on the plaintiff's status as an alleged informant to conclude a substantial risk of harm. Additionally, Colemire was detained in an area of the MCDC with Jordan prior to their relocation to the isolation cell. Before the transfer, there were no signs of tension or animosity between the two. As Colemire admitted, "[w]e hadn't never [sic] fought. I don't think we ever had any issues." [Record No. 42, p. 77] Thus, other than the fact that Jordan was unhappy about the move to isolation, officers did not have reason to believe he held animus towards Colemire or anyone else. And while Colemire insinuates the reason Jordan was angry enough to assault him related to an upcoming family visit and Jordan's birthday, he fails to offer any proof that the officers knew of should have known about those circumstances.

This case is similar to others in which the Court has found summary judgment to be appropriate based on insufficient evidence demonstrating the defendants' actions created a substantial risk of harm to the plaintiff. For example, in *Reedy v. West*, 988 F.3d 907, 912 (6th Cir. 2021), the aggressor told guards "you guys got to move this motherf*cker out of my cell or whatever happens is going to be onto you." (cleaned up). The next day, the plaintiff was assaulted with a pillowcase containing a large rock. However, the United States Court of Appeals for the Sixth Circuit found such comments to be insufficient to establish a substantial risk of serious harm, given a lack of history of acrimony between the plaintiff and the aggressor. Here, Jordan told officers "I don't want him in here. There's going to be problems[,]" which is less of a warning of violence in light of the aggressive statement made

in *Reedy*. *See also Davis v. Chorak*, No. 22-1839, 2023 WL 2487339, at *3 (6th Cir. Mar. 14, 2023) ("Although he asserts that Chorak's criminal history and prior behavioral problems created a general security risk, Davis failed to allege facts suggesting he was personally at 'substantial risk of assault.'")[4]

### B. Deliberate Indifference to Serious Medical Needs

Colemire also asserts that his treatment following the assault constitutes a deliberate indifference to his serious medical needs in violation of the Fourteenth and/or Eighth Amendment. To establish deliberate indifference, Colemire must "demonstrate: (1) an objectively serious medical need; and (2) the defendants, analyzed individually, acted (or failed to act) intentionally and either ignored the serious medical need or 'recklessly failed to act reasonably to mitigate the risk the serious medical need posed.'" *Grote v. Kenton Cnty.*, 85 F.4th 397, 405 (6th Cir. 2023) (quoting *Greene v. Crawford County*, 22 F.4th 593, 607 (6th Cir. 2022)). Again, because Colemire's claims cannot succeed under either test, the Court's analysis is unchanged.

Colemire claims that he was denied medical treatment until his surgery. However, "Colemire himself testified to … the responsiveness of the jail nurse to quickly order x-rays; the imaging that occurred for Colemire; the treatment he received while awaiting surgery, including being given medicine for inflammation and being placed on a soft diet; and the outside treatment he received[.]" [Record No. 51, p. 21] Thus, the Court agrees Colemire

---

[4] As an aside, Colemire's testimony reveals that his severe jaw injury was more likely a consequence of force taken by deputies after he was removed from the cell, and not Jordan himself. However, Colemire has not asserted a claim of excessive force.

cannot proceed on this claim because there is ample evidence suggesting his medical needs were considered and addressed reasonably.

### C. State Constitutional Claims

Colemire's state constitutional claims fail because (1) they are duplicative of his other federal constitutional claims, (2) state constitutional rights are not cognizable under § 1983, and (3) the Kentucky constitution provides no cause of action or analogue to § 1983. [Record No. 51, p. 12 (citing *Griffith v. Correcthealth Kentucky, LLC*, No. 0:15-CV-5-DLB-EBA, 2017 WL 3749775, at *5 n.3 (E.D. Ky. Aug. 30, 2017)]

### V.

Based on the foregoing analysis, it is hereby **ORDERED** as follows:

1. The Report and Recommendation of United States Magistrate Judge Candace J. Smith [Record No. 51] is fully **ADOPTED** and **INCORPORATED** here by reference.

2. The defendants' motion for summary judgment [Record No. 41] is **GRANTED**.

3. Plaintiff Randall Colemire's claims are **DISMISSED** with prejudice.

Dated: February 19, 2025.

Danny C. Reeves, District Judge
United States District Court
Eastern District of Kentucky